UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AARON BALL,<br><br>*Plaintiff*,<br><br>v.<br><br>GEORGE WASHINGTON UNIVERSITY,<br><br>*Defendant.* | Civil Action No. 17-cv-0507 (DLF) |

## MEMORANDUM OPINION AND ORDER

Aaron Ball sued his former employer, George Washington University, for wrongful termination, negligence, and violations of the Americans with Disabilities Act, the D.C. Human Rights Act, and the Family and Medical Leave Act. In support of his claims, Ball seeks to present expert testimony from Michael Faillace, the managing partner of an employment litigation firm in Manhattan. George Washington University asks the Court to exclude Faillace's testimony and report on the ground that it consists entirely of inadmissible legal conclusions. For the reasons below, the Court will grant that request.

## I. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence allows an expert to testify if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. This rule "imposes a special obligation upon a trial judge" to fulfill a "basic gatekeeping obligation" to ensure that any expert testimony is relevant and reliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). And as the D.C. Circuit has held, "[e]xpert testimony that consists of legal conclusions cannot properly assist the trier of fact" to understand the evidence or determine a fact in issue.

*Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997). "[A]n expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied." *Id.* at 1212–13. To tell the difference between factual opinions and legal conclusions, a court should consider whether an expert's testimony "track[s] the language of the applicable statute" and whether the terms used "ha[ve] a specialized legal meaning that is more precise than the lay understanding of the term[s]." *Id.* at 1212 (citing *Torres v. Cnty. of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985)).

## II. ANALYSIS

Faillace's proposed testimony offers no factual or evidentiary assistance to the jury. Faillace's purported expertise consists of legal training and the practice of labor and employment litigation, and various related activities. *See* Dkt. 18-2 at 1–2 (plaintiff's expert witness disclosures). In his report, Faillace concludes that the "Plaintiff was legally disabled under the ADA," that the "Defendant . . . had actual and constructive notice of Plaintiff's disability," that the "Defendant failed to follow the national standard of care by not formulating a reasonable accommodation for Plaintiff," and that the "Defendants engaged in unlawful differential treatment and failed to fulfill their duties under the ADA." *Id.* at 2–3. Those are textbook legal conclusions.

In response to the University's motion to exclude Faillace's testimony and report, Ball "concede[d] that the Expert Report does contain some impermissible legal conclusions that should be excluded" but submitted an Amended Expert Report as well as a redacted version of the original Expert Report and now proposes that the Court admit those. Dkt. 22 at 3. Neither the Amended Expert Report nor the redacted version cures the deficiency. The Amended Expert

2

Report merely restates the same conclusions in different words, setting forth the same legal analysis and legal conclusions as before. *See, e.g.*, Dkt. 22-1 at 5 (articulating the standard for a disability under the ADA). And simply redacting the original report to cut out statements like "Ball was legally disabled" does not suffice: the fundamental problem with Faillace's proposed testimony is not that it opines on ultimate issues, *see* Fed. R. Evid. 704(a), but rather that the only assistance it purports to offer the jury is legal in nature. Ball argues that "[e]ven with the legal conclusions stricken from the Expert Report, . . . [t]he Expert can still help the factfinder understand the standard required to comply with the requirements of the ADA," Dkt. 22 at 4, but this simply illustrates the problem. The Court can convey the relevant legal standards directly without the assistance of an expert witness. *See Burkhart*, 112 F.3d at 1213 ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards.").

      Ball also argues that a portion of Faillace's testimony should be admitted to help establish "the national standard of care in providing accommodations to those who suffer from a disability" for purposes of Ball's negligence claim. Dkt. 22 at 3. It is true that District of Columbia law allows—indeed, requires—expert testimony in a negligence case to establish a national standard of care where "the subject in question is so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layperson." *Butera v. Dist. of Columbia*, 235 F.3d 637, 659 (D.C. Cir. 2001) (quoting *Messina v. Dist. of Columbia*, 663 A.2d 535, 538 (D.C. 1995)); *see also Casey v. McDonald's Corp.*, 880 F.3d 564, 569 (D.C. Cir. 2018); *Toy v. Dist. of Columbia*, 549 A.2d 1, 6 (D.C. 1988). But here, Ball's negligence claim is

predicated on an alleged violation of the ADA and DCHRA.[1]  *See* Compl. ¶ 207 ("GWU and its agents . . . owed a duty to Ball under the ADA and DCHRA to provide him reasonable accommodations for his disability.").  Ball does not allege that the defendants are bound by some national standard of care that deviates from the legal standards imposed by the ADA and DCHRA.  *See id.*  Faillace's proposed testimony on this front consists of his legal interpretations and conclusions about what constitutes, and does not constitute, a "reasonable accommodation" (or, as he rephrases it in his Amended Expert Report, "the national standard of care in reconciling his requests with continued employment to Mr. Ball").  *See, e.g.*, Dkt. 22-1 at 9.  The Court declines to allow Ball's negligence claim to serve as a gateway for Faillace's legal conclusions.[2]

---

[1] In its reply, the University argues that "Ball may not predicate a negligence claim on GW's purported statutory violations" because "[t]he ADA, FMLA, and DCHRA provide comprehensive administrative and judicial remedies against errant employers."  Dkt. 23 at 1.  The University's field preemption argument is beyond the scope of its motion *in limine*, and the Court generally will not entertain arguments first raised in a reply.  *See MBI Group, Inc. v. Credit Foncier Du Cameroun*, 616 F.3d 568, 575 (D.C. Cir. 2010).  The University also presents this argument in its motion for summary judgment.  *See* Dkt. 28-1 at 28–29.  The Court has not yet ruled on that motion and expresses no opinion on it here.

[2] Though neither party has cited *McNeil Pharmaceutical v. Hawkins*, 686 A.2d 567 (D.C. 1996), the Court notes that in that negligence *per se* case, the D.C. Court of Appeals held that "in the face of defense experts who testified that there was no breach of the standard of care, and statutes and regulations which required expert explication, [the plaintiff] was required to present expert testimony concerning the interpretation of the statutes and regulations relied upon by her, so that the jury would be guided in its application of those sources to the conduct at issue in this case."  *Id.* at 583.  To the extent that *McNeil* overrides *Burkhart* in complex negligence *per se* cases, however, the Court concludes that the statutory term at issue here ("reasonable accommodation") is not so complex as to warrant expert testimony.  *Cf. Nat'l Assoc. of the Deaf v. Dist. Hosp. Partners*, 2016 WL 447444 (D.D.C. Feb. 4, 2016), at *5 ("[T]he Court does not agree that the legal factors set out in [a regulation implementing the ADA] are sufficiently complex or beyond the ken of the average factfinder to warrant expert testimony that is couched in legal conclusions.").

## CONCLUSION

For the foregoing reasons, the Court grants the University's Motion *in Limine* to Exclude the Testimony and Report of Plaintiff's Expert Michael Faillace. Accordingly, it is

**ORDERED** that the Defendant's Motion *in Limine* to Exclude the Testimony and Report of Plaintiff's Expert Michael Faillace is **GRANTED**.

**SO ORDERED**.

                                                                                                    _____
                                                                                                    DABNEY L. FRIEDRICH
                                                                                                    United States District Judge

Date: August 23, 2018