UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AARON BALL,<br><br>      *Plaintiff*,<br><br>    v.<br><br>GEORGE WASHINGTON UNIVERSITY,<br><br>      *Defendant*. | Civil Action No. 17-cv-0507 (DLF) |

**MEMORANDUM OPINION & ORDER**

Aaron Ball sued his former employer, George Washington University (GW), for wrongful termination, negligence, and violations of the Americans with Disabilities Act, the D.C. Human Rights Act, and the Family and Medical Leave Act. Before the Court is Ball's motion for sanctions against GW for allegedly destroying two surveillance videos. For the following reasons, the Court will deny the motion.

**I. BACKGROUND**

In the investigation preceding the termination of Ball's employment, GW considered surveillance footage from two days (July 13 and 14, 2015) that showed Ball entering and exiting buildings on campus. Def.'s Opp'n at 1, 3, Dkt. 26. GW produced a July 13 video of Ball in one building, Guthridge Hall, and that video is not at issue here. Def.'s Opp'n at 4, Dkt. 26; Pl.'s Mot. at 3, Dkt. 24. GW also produced screenshots of the July 14 surveillance footage from another building, Lafayette Hall, but it did not produce videos of Lafayette Hall for either July 13 or July 14, which reportedly showed Ball entering and exiting at different times than he had indicated on his time sheet. Robinson Decl. ¶ 9, Dkt. 26-2; Def.'s Ex. 9, Dkt. 26-9; Def.'s Ex. 3 at Ball_001305–07, Dkt. 26-3.

1

The surveillance footage was recorded on network video recorders that automatically delete old footage as the recorders become full. Paradis Decl. ¶¶ 3–5, Dkt. 26-1; Robinson Decl. ¶¶ 2–4, Dkt. 26-2. The video recorders that stored the July 13 and 14 Lafayette Hall footage at issue here typically delete footage every 30 days (and sometimes as early as 14 days) after recording. Paradis Decl. ¶ 6, Dkt. 26-1; Robinson Decl. ¶ 5, Dkt. 26-2. GW police officers routinely permanently download surveillance footage for use in criminal investigations; however, they download surveillance footage for Human Resources (HR) investigations only upon an HR investigator's request. Robinson Decl. ¶¶ 7–8, Dkt. 26-2.

In this case, the parties dispute whether the footage at issue was downloaded. Ball contends that the surveillance footage was permanently stored on CDs and given to Claude Owens, a member of GW's HR department, and ultimately to GW's in-house counsel. Pl.'s Mot. at 2–4, 6, Dkt. 24. Ball further argues that the videos' alleged non-existence shows that GW's in-house counsel destroyed or lost the videos. *Id.* at 3, 6. GW counters that the surveillance footage was not permanently stored but instead was automatically overwritten within 30 days (and possibly 14 days) of recording. Def.'s Opp'n. at 1–12, Dkt. 26.

## II. LEGAL STANDARD

Rule 37(e) of the Federal Rules of Civil Procedure sets forth the inquiry that courts must conduct in deciding whether to impose sanctions for the failure to preserve electronically stored information (ESI). Courts consider whether (1) the ESI "should have been preserved in the anticipation or conduct of litigation"; (2) the ESI "is lost because a party failed to take reasonable steps to preserve it"; and (3) the ESI "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). The burden of proof is on the party alleging spoliation. *See, e.g.*, *Vasser v. Shulkin*, No. 14-0185, 2017 WL 5634860, at *3 (D.D.C. Nov. 22, 2017) ("A

movant seeking sanctions for spoliation must demonstrate that the subject documents actually existed.").[1]

## III. ANALYSIS

The parties do not dispute that the July 13 and 14 surveillance footage of Ball once existed. The question is whether the surveillance footage existed on the date on which GW had a legal obligation to preserve the footage. But the Court need not determine precisely when that legal obligation arose, because Ball concedes that if the videos were automatically overwritten within 14–30 days, as GW claims, this "would likely be enough to end this Court's inquiry."[2] Pl.'s Reply at 8, Dkt. 27; *see also id.* at 2–3 ("Plaintiff's request for spoliation is based entirely on the fact that the footage of the Lafayette Basement, Lafayette Sixth Floor, and Guthridge Hall was copied onto CDs . . . . [I]t is irrelevant that Defendant's video surveillance system overwrites video footage every fourteen (14) to thirty (30) days, as Plaintiff is not arguing that type of destruction constitutes spoliation."). The Court therefore first addresses whether GW permanently stored the July 13 and 14 surveillance footage at issue.

---

[1] Recent decisions have noted that it is unsettled whether a preponderance-of-the-evidence or higher standard applies in this context. *See Yoe v. Crescent Sock Co.*, No. 1:15-cv-3-SKL, 2017 WL 5479932, at *9 n.7 (E.D. Tenn. Nov. 14, 2017); *Jenkins v. Woody*, No. 3:15-cv-355, 2017 WL 362475, at *12 (E.D. Va. Jan. 21, 2017). The Court need not resolve whether a higher evidentiary standard applies because Ball cannot prevail even under a preponderance-of-the-evidence standard.

[2] Although Ball argues that Wells and Owens *should have known* that they had a duty to preserve all three videos because Owens stated during his deposition that he sought to retain the videos, Pl.'s Reply at 6–7, Dkt. 27, Owens testified that he was concerned with *viewing*, not preserving, the surveillance footage, *see* Owens Dep. 52:20–21, Dkt. 26-8 ("I just asked them to -- to get it so we could view it."). Moreover, in his motion, Ball does not argue that GW had a duty to copy the surveillance footage *before* it was overwritten; instead, he asserts that the videos "were clearly copied" but not produced during discovery. *See* Pl.'s Mot. at 4, Dkt. 24.

Relying on the depositions of Wells and Owens, Ball argues that GW permanently stored the relevant surveillance footage before it was overwritten. As Ball notes, Wells testified that "[t]here were copies" of the surveillance videos, which "were given to Claude Owens." Wells Dep. 71:6–12, Dkt. 24-2. Wells stated that he "never had a copy" of the tapes,[3] and he was never asked to obtain them. *Id.* at 74:1–6. And on January 29, 2018, the date of his deposition, Wells testified that he thought Owens had the tapes. *Id.* at 74:9–11. Wells explained that when Owens asked Wells whether he had the tape, Wells told him that he never had it and that Owens had the original. *Id.* at 76:5–8. According to Wells, Owens thought he might have given the tape to "the lawyers." *Id.* at 76:10–20.

During his deposition, Owens answered affirmatively when asked a question about providing the tapes to GW's general counsel's office. Owens Dep. 14:1–11, Dkt. 27-5. Specifically, Owens stated that he had provided the general counsel's office with a tape of the 6th floor of Lafayette Hall, but not the basement of Lafayette.[4] *Id.* at 14:12–17. Owens acknowledged that he had last seen the surveillance footage of the Lafayette basement in 2015. *Id.* at 15:1–6.

GW counters that the surveillance footage was overwritten in the normal course of business. And GW offers an alternative explanation for the testimony of Wells and Owens: there

---

[3] Wells is not clear about the number of tapes that existed; he stated "tape" and "tapes" at different times in reference to the videos. *Compare* Wells Dep. 71:12, Dkt. 24-2, *with id.* at 74:6. Although Ball argues that Owens "knew there were 'CDs' plural in the envelope because he felt the envelope," Pl.'s Reply at 2, Dkt. 27 (citing Owens Dep. 142:16–20, Dkt. 27-5), it is unclear whether Owens's use of the plural "CDs" was intended to affirmatively represent that there was more than one CD in the envelope.

[4] Owens also said that he could not remember if he had provided the general counsel's office with the first video of Guthridge Hall, Owens Dep. 14:18–22, Dkt. 27-5; that video, however, was clearly copied and is not contested by the plaintiff here.

was a misunderstanding. Def.'s Opp'n. at 8, Dkt. 26. GW argues that Owens was confused about the contents of the envelope he received because, as he admitted, he never opened the sealed envelope. Owens Dep. 141:11–143:1, Dkt. 27-5. Wells initially said Owens had commented that he "thought maybe he had given [the second, Lafayette Hall basement video] possibly to I guess the lawyers. I don't know." Wells Dep. 76:10–11, Dkt. 24-2. But Wells later commented, "You are talking to the wrong guy about that. All I did was visually looked at it. Who had it after that, I have no idea." *Id.* at 130:17–21, Dkt. 26-6.

Detective Robinson, who testified that he showed Owens and Wells the surveillance footage at separate times, stated that he never downloaded the Lafayette Hall sixth floor footage. Robinson Decl. ¶¶ 9–10, Dkt. 26-2. Rather, Robinson took a couple screenshots when showing Owens the footage in August 2015, which he later sent to Owens. *Id.* ¶ 9. And, in April 2017, Owens delivered the still-sealed envelope to Richard Weitzner, Senior Counsel in GW's Office of General Counsel. Weitzner Decl. ¶ 2, Dkt. 26-12. Weitzner, in turn, sent the package to Alexandra Romero, an associate at Arent Fox LLP, who opened the sealed envelope and viewed the single video file on the CD; there was no video of Lafayette Hall. *Id.* ¶ 3; Romero Decl. ¶ 2, Dkt. 26-13.

Although the evidence before the Court is unclear, the weight of the evidence tilts in favor of GW's explanation. Robinson's declaration, coupled with evidence that the envelope remained sealed until Romero opened it, supports a finding that the surveillance footage of Lafayette Hall was never downloaded from the video recorders. Robinson stated that he never downloaded the Lafayette Hall sixth floor footage. Robinson Decl. ¶¶ 9–10, Dkt. 26-2. And Owens testified that neither he nor Wells ever opened the sealed envelope. Owens Dep. 140:7–142:15, Dkt. 26-8. To the extent that the deposition testimony of Wells and Owens provides any

support for Ball's theory, the evidence is speculative and inconclusive. *Cf. Putscher v. Smith's Food & Drug Ctrs., Inc.*, No. 2:13-cv-1509, 2014 WL 2835315 (D. Nev. June 20, 2014) (denying spoliation sanctions where no evidence that surveillance footage existed other than a witness's speculative comments); *Mahaffey v. Marriott Int'l., Inc.*, 898 F. Supp. 2d 54, 59 (D.D.C. 2012) (concluding defendants had no duty to preserve surveillance video when "the record [was] muddled concerning whether the requested video images were still in existence at the time that the duty to preserve attached"). Because Ball has not proven—even by a preponderance of the evidence—that GW permanently stored the Lafayette Hall surveillance footage, the Court need not conduct further inquiry under Rule 37(e).

## CONCLUSION

For the foregoing reasons, the Court denies Ball's Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(e). Accordingly, it is

**ORDERED** that the plaintiff's Motion for Sanctions, Dkt. 24, is **DENIED**.

**SO ORDERED**.

DABNEY L. FRIEDRICH
United States District Judge

Date: September 27, 2018